Michael P. **LABALOKIE,** Plaintiff,

v.

**CAPITOL AREA INTERMEDIATE UNIT, John E. Nagle, and Ed Frye,** Defendants.

**Civil No. 1:CV–95–0838.**

United States District Court, M.D. Pennsylvania.

Jan. 19, 1996.

---

Don Bailey, Harrisburg, PA, for plaintiff.

Stuart L. Knade, Cleckner & Fearen, Harrisburg, PA, for defendants.

### MEMORANDUM

RAMBO, Chief Judge.

Before the court is Defendants' motion to dismiss. The motion has been briefed by both parties and is ripe for disposition.

### Background

Plaintiff in this action is Michael P. Labalokie, and Defendants are Capitol Area Intermediate Unit ("CAIU"), John Nagle and Edward Frye. For purposes of this motion, the court accepts as true the following factual averments in Plaintiff's Complaint. CAIU is a unit of the state public education system which provides a variety of services to member districts, including the transportation of special education students, which is partially undertaken by private bus or van operators under contract with CAIU. During all times relevant to this action Defendant Nagle served as Executive Director of CAIU and Defendant Frye was an agent or officer of CAIU. In September 1993, Nagle retired and Frye assumed the post of Executive Director, which he continues to hold presently. Plaintiff worked for the CAIU as an independent bus contractor from 1987 to 1993.

At a CAIU board meeting in April of 1993, Plaintiff openly accused Nagle of scapegoating a former CAIU officer, Don Boyanowski, for mismanagement of the Unit. Plaintiff further charged that if any mismanagement had occurred the responsibility lay with Nagle himself. As a consequence of this conduct, in June of 1993, Nagle informed Plaintiff by letter that he would no longer be permitted to contract with CAIU.

Count I of Plaintiff's Complaint asserts a civil rights claim under 42 U.S.C. § 1983, and Count II is a pendant state claim of tortious

interference with contract. Defendants move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

*Discussion*

## I. Motion To Dismiss Standard

■ Under Rule 12(b)(6), "a Complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must " 'take all well pleaded allegations as true, construe the Complaint in the light most favorable to the plaintiff,' and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665–66 (3d Cir.1988) (quoting *Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 506 (3d Cir.1985)), *cert. denied,* 489 U.S. 1065, .109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). "Because 12(b)(6) results in a determination on the merits at an early stage of the case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." *Mortensen v. First Fed. Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977).

## II. Section 1983 Claim

■ In order to state a claim under § 1983, a plaintiff must allege that a defendant deprived her of a federal constitutional or statutory right while acting under color of state law. *Carter v. City of Philadelphia,* 989 F.2d 117, 119 (3d Cir.1993). Plaintiff's § 1983 claim is based upon an alleged conspiracy to violate his rights to freedom of expression and association under the First Amendment, and to due process of law under the Fourteenth Amendment, as well as actual violations of those rights.

### A. First Amendment Claim

■ There is a considerable body of law on the question of when the termination of a public employee on the basis of expression runs afoul of the First Amendment. However, before discussing those standards the court must determine whether Plaintiff, who worked with CAIU as an independent contractor rather than an employee, is entitled to their protection. Defendants argue that under *Horn v. Kean,* 796 F.2d 668 (3d Cir. 1986), he is not.

The *Horn* decision can only be understood in its proper context against the backdrop of the Supreme Court's decision in *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). The question presented in *Lefkowitz* was whether, in light of the prohibition against requiring state employees to waive their Fifth Amendment protection against self-incrimination as a condition of public employment[1], independent contractors could be compelled to do so. In favor of permitting such a waiver in the case of contractors, the state argued that the economic consequences of exclusion from state contracting are less severe than those suffered by a terminated public employee. *Id.* at 83, 94 S.Ct. at 325. The Supreme Court rejected this reasoning, as follows:

> We fail to see a difference of constitutional magnitude between the threat of job loss to an employee of the state, and a threat of loss of contracts to a contractor.... A significant infringement of constitutional rights cannot be justified by the speculative ability of those affected to cover damage.

*Id.*

In *Horn,* the question presented was whether New Jersey motor vehicles agents, selected by a Democratic governor through the political patronage process, were protected by the First Amendment from being replaced through the same process upon the election of a Republican governor. Notwithstanding that public employees are generally insulated from termination on the basis of political affiliation, the Third Circuit concluded that the agents could be replaced since they were independent contractors. Its decision to afford less First Amendment protec-

---

1. In *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Supreme Court held that such waivers could not be required of public employees.

tion to contractors was based upon two factors. First, the court identified the political patronage process as an integral and valuable feature of our democratic system:

> Clearly, partisan politics lies at the very core of our democratic process, and just as clear is the notion that permitting those who hold public office to employ independent contractors based on political party affiliation provides an effective method to implement the administrations's program. Policy implementation is just as important as policymaking.

*Horn,* 796 F.2d at 674. (citation and internal quotations omitted). Second, the court emphasized that independent contractors are less economically dependent upon the state than employees and thus less susceptible to being silenced by the threat of losing state income. *Id.* at 675 (citing *LaFalce v. Houston,* 712 F.2d 292, 294 (7th Cir.), *cert. denied,* 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 175 (1984)). *Horn* distinguished *Lefkowitz* on the ground that the facts of *Horn* required balancing the "fundamental values" implicated by the political patronage process against freedom of expression and association. *Id.* at 676–77. Conversely, no such balancing was necessary in *Lefkowitz* since the court recognized no significant state interest in mandating that state employees or contractors forfeit their rights against self-incrimination.

This court believes that the rule of *Lefkowitz* and not *Horn* controls the instant case. *Horn's* departure from *Lefkowitz's* general rule against allocating constitutional rights disparately according to the employee/contractor distinction was based upon a countervailing interest deemed to be fundamental within our system of government. *Horn,* 796 F.2d at 674. No such counterweight to the general rule is present in the instant case. Consequently, the only support that remains under *Horn's* reasoning in favor of the employee/contractor distinction is the potentially different levels of economic dependency of the two groups. In the court's view, this alone is insufficient to maintain the distinction for constitutional purposes. The court is especially influenced by the unambiguous and rather general

statement in *Lefkowitz* that "[a] significant infringement of constitutional rights cannot be justified by the speculative ability of those affected to cover damage." 414 U.S. at 83, 94 S.Ct. at 325. Accordingly, the court concludes that outside the political patronage context state employees and independent contractors are entitled to the same degree of First Amendment protection.

▉ Having reached that conclusion, the court must determine whether Plaintiff has stated a claim under the applicable doctrine. The Third Circuit has adopted a three step analysis for adjudicating a public employee's claim of retaliation for expression. A plaintiff must first demonstrate that the speech in question was protected. Second, she must show that it was a substantial factor in bringing about the alleged retaliation. Finally, a defendant may rebut the claim by demonstrating that the action alleged to be retaliatory would have occurred even in the absence of the protected speech. *Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993) (citations omitted).

▉ To be protected, the speech activity of a public employee must bear on a "matter of public concern." *Id.* at 194. "An employee's speech addresses a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 195. In making this determination, the court must examine the expression's "content, form, and context." *Id.* The content of speech is of public concern, for example, where the speaker seeks to expose the wrongdoing of a public official. *Id.* The form and context of the speech will suggest public concern if it is not confined to the plaintiff's immediate work environment. *Id.* Furthermore, "[b]ecause of the nature of their employment, speech by public employees is deemed to be speech about public concern when it relates to their employment so long as it is not speech upon matters of only personal interest." *Swineford v. Snyder County, Pennsylvania,* 15 F.3d 1258, 1271 (3d Cir.1994) (citation and internal quotations omitted).

Plaintiff alleges that he criticized John Nagle, the chief executive officer of CAIU, for scapegoating a former CAIU official for mis-

management of the Unit, and stated that Nagle himself may be responsible for mismanagement. This alleged statement, viewed most favorably to Plaintiff, asserted the wrongdoing of a public official and related to Plaintiff's employment in a manner of more than personal interest. Furthermore, the statement was allegedly made at a CAIU board meeting, outside the confines of Plaintiff's daily work environment. Under the standards set forth above, Plaintiff has stated a viable First Amendment claim and Defendants' motion to dismiss it will be denied.

### B. Due Process Claim

Defendants contend that Plaintiff's due process claim must be dismissed because he has not alleged the abridgment of a property or liberty interest. Plaintiff maintains that Defendants effectively prohibited him from obtaining future contracts with CAIU and thereby deprived him of both a property and liberty interest.

 The deprivation of a property or liberty interest is a precondition to either a procedural or substantive due process claim. *See, e.g., Logan v. Zimmerman Brush Company,* 455 U.S. 422, 429, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1981) (procedural due process context); *DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell,* 53 F.3d 592, 598–601 (3d Cir.1995) (substantive due process context). It is settled law that there can be no property interest in obtaining future government contracts, and that suspension or debarment from bidding on such contracts only implicates a liberty interest if it is based upon charges of fraud or dishonesty. *See, e.g., Bank of Jackson County v. Cherry,* 980 F.2d 1354, 1357–58 (11th Cir.1992); *Sutton v. United States Department of Housing & Urban Development,* 885 F.2d 471, 474–75 (8th Cir.1989); *ATL, Inc. v. United States,* 736 F.2d 677, 682–83 (Fed.Cir.1984). Plaintiff does not aver that CAIU's alleged refusal to consider him for future contracts was based upon charges of fraud or dishonesty. Plaintiff has thus not alleged the deprivation of a property or liberty interest. Accordingly, Plaintiff has failed to state any form of a due process claim and

Defendants' motion to dismiss this portion of the Complaint will be granted.

### C. Conspiracy Allegations

 Defendants argue that Plaintiff's conspiracy allegations are deficient in the following two respects: (1) Nagle, Frye and the CAIU form a single unit which cannot conspire with itself as a matter of law; and (2) the allegations fail for lack of specificity with respect to Defendant Frye.

The parties agree that while a corporate entity and its agents generally cannot be said to conspire absent an outside participant, they can do so if a corporate agent is acting on her own behalf, beyond her role as officer or employee. *Doe v. Kohn Nast & Graf, P.C.,* 862 F.Supp. 1310, 1328 (E.D.Pa.1994). The parties differ, however, as to whether Plaintiff has alleged that Defendants Nagle and Frye were acting outside the scope of their employment. Plaintiff avers that Nagle and Fry engaged in "misconduct ... when they punished Labalokie for speaking out, for associating with Don Boyanowski, and for criticizing John Nagle." (Complaint at ¶ 25.) The alleged punishment was "to exclude Michael Labalokie from an opportunity to work for the [CA]IU . . . ." (*Id.* at ¶ 26(b).) These allegations, viewed in the light most favorable to Plaintiff, give rise to an inference that Nagle and Frye were acting outside their role as CAIU agents. Accordingly, the court concludes that Plaintiff's pleadings are sufficient with respect to this aspect of his conspiracy claim to survive Defendants' motion to dismiss.

 Defendant Frye attacks the conspiracy claim on the additional ground that it is not plead with sufficient particularity. In order to state an adequately specific § 1983 conspiracy claim:

The plaintiffs must plead with particularity the "circumstances" of the alleged wrong doing in order to place the defendants on notice of the precise misconduct with which they are charged. Only allegations of conspiracy which are particularized, such as those addressing (1) the period of the conspiracy, (2) the object of the conspiracy, and (3) certain actions of the al-

leged conspirators taken to achieve that purpose, will be deemed sufficient.

*Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F.Supp. 981, 986 (E.D.Pa.1994) (numbers added) (citing *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989) (applying this standard in the RICO context). The court further notes that when the sufficiency of civil rights allegations are challenged, the court must look beyond "conclusory allegations ... to the factual scenario itself to examine whether the conduct alleged, viewed most favorably to plaintiffs, is reasonably susceptible to falling within the conclusions alleged." *Freedman v. City of Allentown Pennsylvania*, 853 F.2d 1111, 1115 (3d Cir.1988). If the court concludes that the allegations are insufficiently particular, it should generally permit amendment. *Id.* at 1114. If the lack of specificity results from the defendant's control of relevant information, the court must permit a reasonable amount of discovery under the circumstances. *Id.*

▪ Plaintiff identifies the period of the alleged conspiracy as sometime between April and June of 1993, and he identifies the object of the conspiracy as barring him from future contracting with CAIU. However, Plaintiff alleges no specific conduct whatsoever connecting Frye to the conspiracy. While Plaintiff avers that his "termination" occurred with Frye's "agreement" and "support," and that Frye has since "continued, up-held, ratified, and approved the wrongful acts," (Complaint at ¶¶ 26(c) and 28), these are precisely the type of conclusory allegations held to be inadequate in *Freedman*. Plaintiff has set forth no underlying factual scenario involving Frye about which the conclusions could be said to be true or false. Nevertheless, in accordance with *Freedman*, Plaintiff will be given an opportunity to amend his pleadings, or argue for additional discovery, before the conspiracy allegations are dismissed.

**2.** The rationale underlying the general identity between a corporation's and its agent's acts for contract purposes is that a corporation can act only through its agents, and an agent's actions are binding upon the corporation in the contract context. *Daniel Adams,* 519 A.2d at 1000–01;

## III. Tortious Interference With Contract

▪ In Count II of the Complaint, Plaintiff asserts a tortious interference with contract claim against Defendants Nagle and Frye. Defendants move to dismiss the claim on the ground that as agents of CAIU, Nagle and Frye's actions are coextensive with CAIU's and thus cannot constitute interference with a CAIU contract.

▪ A tortious interference with contract claim will only lie where a defendant has interfered with a plaintiff's contract with a *third party.* *Daniel Adams Associates v. Rimbach Publishing, Inc.,* 360 Pa.Super. 72, 519 A.2d 997, 1000–01 (1987). As a general rule, under Pennsylvania law a corporate entity and its agents are not distinct parties for purposes of contracting and thus a corporation's agents cannot tortiously interfere with its contracts. *Id.* However, this rule is limited to circumstances in which an agent's conduct occurs within the scope of her employment.[2] *Id.; see also Ramsbottom v. First Pennsylvania Bank, N.A.,* 718 F.Supp 405, 411–12 (D.N.J.1989); *Wells v. Thomas,* 569 F.Supp. 426, 435 (E.D.Pa.1983); *DuSesoi v. United Refining Company,* 540 F.Supp. 1260, 1275 (W.D.Pa.1982).

As set forth above, Plaintiff's Complaint, viewed most favorably to Plaintiff, suggests that Nagle and Frye were acting outside the scope of their employment when they allegedly interfered with Plaintiff's contract with CAIU. Accordingly, Defendants' motion to dismiss Plaintiff's tortious interference with contract claim will be denied.

## IV. Immunity Defenses

▪ Defendants move to dismiss Plaintiff's § 1983 claim against CAIU under the Political Subdivision Tort Claims Act. 42 Pa.Cons.Stat.Ann. § 8541 *et seq.* ("the Act"). However, the Act specifically excepts "willful misconduct" from its reach. *See* § 8550. Plaintiff's Complaint, viewed most favorably to Plaintiff, alleges willful misconduct on the

*DuSesoi,* 540 F.Supp. at 1275. Since this is not the case when an agent acts for her own purposes outside the scope of her employment, it is sensible that such circumstances are an exception to the general rule.

510

part of CAIU. Accordingly, the Act does not provide a basis to dismiss Plaintiff's § 1983 claim against CAIU.

Defendant Frye also claims that he is entitled to immunity from this suit. The court will defer ruling on this portion of the instant motion since it will grant Plaintiff leave to amend his Complaint with respect to Frye. *See supra* at 509. When the Complaint is amended, or the opportunity for amendment is declined, the court will rule on Frye's immunity claims.

### Conclusion

The court concludes that Plaintiff has stated a § 1983 claim based upon First Amendment violations and that he has failed to do so on the basis of due process violations. The court has also determined that Plaintiff's conspiracy allegations are insufficiently particular with respect to Defendant Frye, and it will grant leave to amend accordingly. Finally, the court has rejected Defendants' argument in favor of dismissing Plaintiff's tortious interference with contract claim, as well as CAIU's assertion of immunity.

An appropriate order will be issued.