**Margaret HENNESSY, Appellant,**

v.

**Dr. Jose SANTIAGO, Nancy Albert and Mercer County, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1997.

Filed Feb. 20, 1998.

Susan S. Jackson, Butler, for appellant.

William G. McConnell, Sharon, for Dr. Jose Santiago, appellee.

Timothy Lijewski, Pittsburgh, for Nancy Albert & Mercer County, appellees.

Before POPOVICH, HUDOCK and HESTER, JJ.

HUDOCK, Judge:

This is an appeal from the order of the trial court granting Appellees' preliminary objections in the nature of a demurrer. We affirm in part and reverse in part.

The pertinent facts and procedural history of this case can be summarized as follows: Margaret Hennessy (Appellant) was employed by Dr. Jose Santiago (Santiago) as a habilitative counselor. Appellant counseled clients of both Santiago's individual practice and the corporation of which he controlled fifty percent, the Alliance for Behavioral Developmental Disability (ABDD). ABDD provided community living arrangements for Mercer County residents pursuant to contracts with Mercer County Mental Health/Mental Retardation (MH/MR). Additionally, Mercer County residents living in ABDD group homes received behavior intervention services from Santiago. Nancy Albert (Albert), Assistant Mercer County Administrator, apparently oversaw the activities of Mercer County MH/MR.

On August 12, 1995, Appellant received a telephone call from a local hospital. She was informed that one of the ABDD residents had been raped by another resident. At the hospital, a report had been given to the police. It is disputed by the parties whether the police were planning to continue their investigation.

Appellant spent the next five days conducting her own investigation. She talked to the rape victim, called a rape hotline and contacted the Mercer County District Attorney (D.A.). On August 16, 1995, Appellant called Santiago and told him that she was taking the victim to the D.A. the next day. Appellant alleges that Santiago not only didn't object to this decision, he actually encouraged it. After the victim met with the Mer-

cer County D.A.'s Office, it agreed to file charges and the perpetrator was arrested.

On August 17, 1995, Santiago informed Appellant that she was to see him the next day. Later that same day, Appellant learned from an undisclosed source that Albert issued a directive ordering Appellant and one other caseworker off the rape victim's case. For his part, Santiago removed Appellant from all ABDD work the next day and then terminated her on August 25, 1995. Despite the fact that Santiago proffered six independent reasons for her termination, Appellant believes and avers that Albert instructed Santiago to terminate her in retaliation for her decision to assist the rape victim.

At issue in this appeal is Appellant's three count second amended complaint. Count One asserts a claim for wrongful discharge against Santiago. Count Two alleges that Albert, Mercer County and Santiago deprived the plaintiff of her civil rights under 42 U.S.C. section 1983. Count Three contends that Albert tortiously interfered in Appellant's employment relationship with Santiago.

The preliminary objections of all defendants were filed with respect to Appellant's first amended complaint. The parties, however, stipulated that they would be judged against the second amended complaint. On April 1, 1997, the trial judge entered an opinion and order sustaining the preliminary objections of all defendants and dismissing Appellant's second amended complaint. At that point, this appeal followed.

 In this appeal, Appellant is challenging the order sustaining Appellees' preliminary objections in the nature of a demurrer. We first note our scope and standard of review:

Our scope of review from an order which sustains preliminary objections in the nature of a demurrer is plenary. We must determine the legal sufficiency of the Appellant's complaint and decide whether sufficient facts have been pled which would permit recovery by the plaintiff if ultimately proven. We must accept as true all well-pleaded facts contained in the com-

plaint together with all reasonable inferences which may be deduced therefrom. We will sustain the trial court's demurrer if the facts pled in the plaintiff's complaint could not possibly state a cause of action permitting recovery.

*Kaplan v. Cablevision of Pa., Inc.,* 448 Pa.Super. 306, 671 A.2d 716, 718–19 (1996), *alloc. den.,* 546 Pa. 645, 683 A.2d 883 (1996) (citations omitted). Moreover, where doubt exists as to whether a demurrer should be sustained, the doubt should be resolved in favor of overruling it. *Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 619, 702 A.2d 850, 853 (1997) (citing *Mahoney v. Furches,* 503 Pa. 60, 66, 468 A.2d 458, 461–62 (1983)).

Appellant presents four issues for our review:

1. Whether Count I of [Appellant's] Second Amended Complaint sets forth facts sufficient to support a claim against [Santiago], for wrongful discharge.

2. Whether Count II of [Appellant's] Second Amended Complaint sets forth facts sufficient to state a cause of action against [Albert] and Mercer County for violation of [Appellant's] Civil Rights.

3. Whether Count II of [Appellant's] Second Amended Complaint sets forth facts sufficient to support a claim against [Santiago] for violation of [Appellant's] Civil Rights.

4. Whether Count III of [Appellant's] Second Amended Complaint sets forth facts sufficient to state a cause of action against [Albert] for Tortious Interference with Contract.

Appellant's Brief at 3.

## A. WRONGFUL DISCHARGE

▇▇▇ We first address Appellant's allegation that Count I of her second amended

complaint sets forth facts sufficient to support a claim for wrongful discharge against Santiago. It is well established that Pennsylvania recognizes the at-will employment doctrine. *Shick v. Shirey,* 456 Pa.Super. 668, 691 A.2d 511, 513 (1997) (*en banc*), *alloc. granted,* —— Pa. ——, 704 A.2d 639 (1997). As this Court has noted, however, there are a few, narrow public policy exceptions to the at-will employment doctrine:

> [T]hese exceptions fall into three categories: an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute.

*Shick,* 691 A.2d at 513 (citation omitted and numbers added).

Instantly, Appellant is claiming that she falls within exception number two. She alleges that Pennsylvania law, regulation and her profession's code of ethics all required her to report the rape to the authorities.[1] In order to achieve this end, however, she has asked this Court to engage in an extremely expansive reading of the law.

Principally, Appellant relies upon *Field v. Philadelphia Elec. Co.,* 388 Pa.Super. 400, 565 A.2d 1170 (1989), in support of her argument. We find *Field* inapposite. There, federal regulations *required* the plaintiff, a nuclear plant worker, to report violations of federal law. Plaintiff, after alerting company officials through proper channels and seeing that they took no action, reported the violations to the Nuclear Regulatory Commission. Very soon thereafter, he and his wife were fired.

Appellant's case is very different. She may be correct that these mandates require

---

1. Appellant directs us to the Mental Health Procedures Act, 50 P.S. section 7101–7503 (Section 7102 states that the act is to "assure the availability of adequate treatment to persons who are mentally ill...." Section 7104 adds "Adequate treatment means a course of treatment designed and administered to alleviate a person's pain and distress and to maximize the probability of his recovery from mental illness."); the Mental Health and Retardation Act of 1966, 50 P.S. section 4301(a)(Counties are required to provide

for the "care, treatment, rehabilitation and detention of the mentally disabled."); the Pennsylvania Administrative Code, 55 Pa.Code section 5100.32(a)(8)(though the portion of the Code that she cites in her brief can properly be found at section 5100.32(a)(9): Release of confidential patient information allowed "in response to an emergency medical situation when release of information is necessary to prevent serious risk of bodily harm or death."); and, part of the National Board of Certified Counselor's Code of Ethics.

a "*safe* habilitative environment" for mental healthcare patients. Appellant's Brief at 19. We disagree, however, with her conclusion that they also impose an affirmative duty upon all mental healthcare workers to investigate and report possible crimes involving their patients. This would be particularly true where, as in this case, the alleged crime had already been reported to the proper authorities.

Therefore, unlike the facts in *Field*, it is not clear that Appellant was required to do anything at all. Additionally, we note that none of the laws or regulations cited by the Appellant are similar to 23 Pa.C.S.A. section 6311, "**Persons required to report suspected child abuse.**" As its title suggests, this section requires certain people, including mental health professionals, to report suspected child abuse. This section demonstrates that our legislature has chosen to place affirmative reporting duties upon mental healthcare professionals in some situations, but not in others. Unfortunately for Appellant, the facts of her case squarely place her in the latter category. Since no authority required Appellant to act as she did, we find no authority for us to reverse the trial court's decision to grant Santiago's preliminary objections as to Count I of the second amended complaint, wrongful discharge.

## B. MUNICIPAL LIABILITY UNDER 42 U.S.C. SECTION 1983

 Second, Appellant is claiming that Mercer County has liability for Albert's alleged decision to order the firing of Appellant under 42 U.S.C. section 1983.[2] When an appellant alleges a deprivation of her rights under section 1983, a court must determine: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *See, e.g., Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir.1993). The

Third Circuit has clearly enunciated the standard that Appellant must meet in order to show municipal liability under section 1983:

> A government entity may not be held liable under section 1983 under the respondeat superior doctrine. To obtain a judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of the rights alleged. [*Monell v. Department of Social Services*, 436 U.S. 658, 692–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).] Thus, section 1983 liability attaches to a municipality only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." [*Id.* 436 U.S. at 694, 98 S.Ct. at 2037–38.]
>
> A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)).
>
> In either of these cases, it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom.

\* \* \*

The question of who is a "policymaker" is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 142, 108 S.Ct. 915, 934, 99 L.Ed.2d 107 (1988). In looking to state law, a court must determine which official has final, unreviewable

---

2. Count II of Appellant's complaint can reasonably be read to allege that both Albert and Mercer County, individually and collectively, deprived her of her civil rights. In this section of this Opinion, however, we consider only Mercer

County's municipal liability. Appellant's argument that Albert should be held individually liable under a conspiracy theory will be considered later. *See, infra.*

discretion to make a decision or take an action.

*Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480–81 (3d Cir.1990) (some citations omitted). Moreover, the Supreme Court has made it clear that "appropriate circumstances" will warrant the imposition of municipal liability for a "single decision by municipal policymakers."[3] *Pembaur,* 475 U.S. at 480, 106 S.Ct. at 1298.

■ Based on our analysis of Appellant's complaint, we cannot agree with the conclusion of the trial court that she has failed to state "any cause of action against Defendants Nancy Albert and Mercer County." Opinion and Order, 4/1/97, at 4. As *Andrews* counsels, Appellant needs to demonstrate that an official policymaker with final authority to act made an unreviewable decision that deprived an individual of her civil rights. A fair reading of Appellant's second amended complaint convinces us that she has met her burden at this stage of the proceedings.

In paragraph 36, Appellant alleges that Albert was a policy making official of the County or that she had final decisionmaking authority. Appellant also avers that Santiago originally encouraged her to take the rape victim to the District Attorney. Second Amended Complaint, 3/13/97, paragraph 15. Later, only after the alleged intervention of Albert, was she taken off the case and ultimately terminated by Santiago. *Id.* at paragraphs 18 and 23. Finally, she maintains that the action of Albert deprived her of her free speech rights under the First Amendment to the United States Constitution. *Id.* at paragraph 40.

While Appellant has not proven any of these facts, that is not her burden at this point of the proceedings. Despite the protestations of Mercer County, this is not a case where Appellant's complaint "could not possibly state a cause of action permitting recovery." *Kaplan, supra.* Therefore, Appellant has pled sufficient facts to permit her the opportunity for further discovery.

■ Alternatively, Appellant argues that Mercer County is liable under a line of Supreme Court cases that impose municipal liability for a failure to adequately train and supervise municipal employees. "[An] inadequacy of ... training may serve as the basis of section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom [municipal employees] come into contact." *City of Canton vs. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). The court cautioned, however, that the inadequate training had to be the result of some "conscious" or "deliberate" choice of the municipal authority. *Id. Canton* involved the failure of the city to properly train its police force for situations it would likely encounter fighting crime.

We fail to see how Appellant falls within the ambit of *Canton.* In particular, her complaint is devoid of any allegation that Mercer County failed to properly supervise or train either Albert *or* Santiago. In fact, in order to bring herself within the ambit of *Monell, supra,* she alleges that Albert was a county policymaker in whom decision-making authority was vested. Second Amended Complaint, 3/13/97, Paragraph 36. Moreover, we note that the Supreme Court recently decided not to extend the failure to train line of cases into the hiring context. *See Bryan County,* —— U.S. at ——, 117 S.Ct. at 1393 (county could not be held liable under section 1983 for failure of police chief to adequately check background of recent hire). Absent a specific instance where municipal policy led an official to violate a petitioner's civil rights,

---

**3.** We recognize that the Supreme Court's recent decision in *Commissioners of Bryan County v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626, *reh'g denied,* —— U.S. ——, 117 S.Ct. 2472, 138 L.Ed.2d 227 (1997), has called into question the future viability of the so-called "one-act" doctrine in section 1983 actions. However, the majority in *Bryan County* chose not to decide the issue in that case. *Id.,* —— U.S. at ——, 117 S.Ct. at 1392 ("[A]ssuming without deciding that proof of a single instance ... could ever trigger municipal liability...."). Therefore, we believe that the one-act doctrine remains viable for plaintiffs pursuing recovery under section 1983 at the present time. As the *Bryan County* majority noted, "Accordingly, proof that a municipality's ... authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Id.* —— U.S. at ——, 117 S.Ct. at 1389.

we see no reason why the Supreme Court would choose to extend *Canton* to any other employment situation.

Based on the foregoing, we hold that Appellant has alleged sufficient facts that, if proven, would allow her to obtain a recovery against Mercer County for the alleged violation of her civil rights by Albert under section 1983. Thus, we reverse the portion of the trial court order granting the preliminary objections of Mercer County as to Count II of the Second Amended Complaint.

## C. PRIVATE ACTOR LIABILITY UNDER 42 U.S.C. SECTION 1983

Next, Appellant alleges that Santiago is liable for a violation of her civil rights under section 1983 as well. Since Santiago is a private individual, Appellant must be able to demonstrate that his decision to terminate her was fairly attributable to Mercer County. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). Such a superficially simple concept has proven extremely difficult to apply in practice. *Community Med. Ctr. v. Emergency Med. Serv.*, 712 F.2d 878, 879 (3d Cir. 1983).

▆▆▆ Nevertheless, at least three relevant paradigms of state action by a private individual have developed in Supreme Court jurisprudence:[4] (1) the "public function" test, *see Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982) (where a private actor is performing activities or services which traditionally have been the exclusive prerogative of the state); (2) the "symbiotic relationship" test, *see Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961) (where interdependence between state and private actor is such that they were joint participants in the activity); and (3) the

"close nexus" test,[5] *see Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (where the state can be deemed responsible for the specific conduct of the private actor). Instantly, Appellant is alleging that Santiago is liable under the "public function" test because the provision of inpatient habilitative services is a function normally reserved to county government pursuant to state law. Second Amended Complaint, 3/13/97, paragraph 34a. *Rendell–Baker* established a three-factor test for courts to use when considering whether or not a private entity is a public actor for purposes of section 1983 liability: (1) the reliance of the entity upon the state for its funding; (2) the extent to which the state regulates the entity; and (3) whether the public function performed by the entity has traditionally been the exclusive province of the state. *See Rendell–Baker*, 457 U.S. 830, 840–42, 102 S.Ct. 2764, 2770–72.

In *Rendell–Baker*, teachers at a private, nonprofit school for maladjusted students were discharged for assisting students who protested against some policies of the school's board of directors. The teachers then brought suit against the school and its directors for violations of their First, Fifth and Fourteenth Amendment rights. The Supreme Court held that the school did not qualify as a state actor.

While the Court noted that most of the school's budget came from public funds, it could not conclude that the receipt of state funds was enough to make it a state actor. It noted that states contract out for many services: "Acts of private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell–Baker*, 457 U.S. at 841, 102 S.Ct. at 2772. Moreover, the Court commented that even extensive regulation of the school by the state did not make it a state actor. Essentially, regu-

---

4. The test to be applied in any one case is never straightforward. However, our decision to examine these three tests is counseled by federal case law. *See generally, Goussis v. Kimball*, 813 F.Supp. 352, 357 (E.D.Pa.1993) (citing *Burton v. Wilmington Parking Authority*, [365 U.S. 715, 81 S.Ct. 856 (1961)] & [*Community Med. Center*, 712 F.2d at 880]).

5. We will discuss the applicability of the "close nexus" test to the instant case after we consider Appellant's section 1983 conspiracy claim. *See, infra.*

lations could rise to the level of state action only if they required the discharge of the employees. Since they did not, the extensive regulation did not qualify as state action. *Id.* at 841–42, 102 S.Ct. at 2771–72.

Finally, the public function test was not met because the education of maladjusted students, while required by state law, had not traditionally been an exclusive state function. Essentially, even though Massachusetts' legislature chose to educate maladjusted students in this manner, this choice did not make the function exclusively the province of the state.

■■■ Turning to the facts of Appellant's case, we cannot conclude that Santiago is a state actor under the "public function" test. While the record does not disclose how much of Santiago's business dealt with county clients, it is clear that any regulation of Santiago by the county was minimal at best. Moreover, Appellant does not allege that county employment procedures caused her firing. Additionally, despite the fact that the county was required to provide services pursuant to the Mental Health and Mental Retardation Act of 1966 and, thus, contracted with Santiago to procure them, we cannot agree with Appellant's assertion that his services would traditionally have been the exclusive province of the state.

■■■ Similarly, we feel that the facts of Appellant's case do not fit within the "symbiotic relationship" paradigm either. This test considers the entire relationship among the Appellees and considers whether they are interdependent upon one another. *See, e.g., Imperiale v. Hahnemann Univ.,* 776 F.Supp. 189, 199 (E.D.Pa.1991), *aff'd,* 966 F.2d 125 (3d Cir.1992). It is clear from the pleadings that Santiago, ABDD and Mercer County MH/MR are not so interdependent that the action of one can be fairly attributed to the others without further evidence.

Additionally, the facts of the instant case are not similar to those in *Burton, supra.* In that case, a restaurant accused of racial discrimination held a lease for space within a public parking garage built with public funds. Moreover, the lease had been issued by a public authority. Based on these unique facts, the state authority itself was held to be a joint participant in the operation of the restaurant.

Appellant does not allege analogous facts in the instant case. While it is true that Santiago and ABDD together provided services to clients of Mercer County MH/MR, Appellant was not employed solely to assist those patients. Her own pleadings indicate that, originally, Santiago only removed her from cases he handled for Mercer County. Second Amended Complaint, paragraph 19. Thus, we can safely conclude that Santiago and Mercer County were not joint, interdependent actors. Instead, Santiago was akin to an independent contractor of Mercer County. Such facts do not qualify the relationship between the Appellees as a "symbiotic relationship." *Accord, Rendell–Baker,* 457 U.S. at 843, 102 S.Ct. at 2772.

## D. CONSPIRACY TO DEPRIVE APPELLANT OF HER CIVIL RIGHTS

■■■ Paragraph 34b of Appellant's second amended complaint alleges that Santiago and Albert acted in concert to deprive Appellant of her civil rights. It is well established that a private actor and a public actor working in concert can form a civil conspiracy to violate an individual's civil rights under section 1983. See *Adickes v. Kress & Co.,* 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). In order to state an adequately specific section 1983 conspiracy claim:

> The plaintiffs must plead with particularity the "circumstances" of the alleged wrong doing in order to place the defendants on notice of the precise misconduct with which they are charged. Only allegations of conspiracy which are particularized, such as those addressing (1) the period of the conspiracy, (2) the object of the conspiracy, and (3) certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.

*Labalokie v. Capital Area Intermediate Unit,* 926 F.Supp. 503, 508–09 (M.D.Pa.1996) (quoting *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989) (applying this standard in the RICO context)). Moreover, we are to look

beyond the bare allegations of the complaint and consider whether the conduct reasonably could have occurred. *Labalokie,* 926 F.Supp. at 509. Given the factual situation presented by Appellant, we conclude that she has presented a cognizable section 1983 conspiracy action against Santiago and Albert.

Appellant alleges that Santiago originally supported her attempt to assist the rape victim. She claims that she was suspended and later terminated because Albert intervened in the case. Before this sequence of events, there was no indication that Appellant was doing a poor job or that she would be taken off the case. If proven, the object and the result of the conspiracy were the termination of Appellant's employment with Santiago. We agree that she alleges sufficient facts to support a section 1983 action.

Finally, Appellant's conspiracy pleadings also satisfy the "close nexus" test for state action. "[T]he close nexus approach focuses on whether the [county] can be deemed responsible for the specific conduct...." *Imperiale,* 776 F.Supp. at 199. Clearly, if Appellant can prove sufficient facts to establish a conspiracy of Santiago and Albert to fire her, she can show a close nexus between Santiago's decision to terminate her employment and Albert's alleged involvement in that decision.

Therefore, we affirm the granting of Santiago's preliminary objections as to Count II, paragraph 34a of Appellant's second amended complaint, but reverse as to the allegation of conspiracy contained in Count II, paragraph 34b. Additionally, we reverse the granting of Albert's preliminary objections as to Count II, but only with respect to the section 1983 conspiracy allegation.

### E. INTENTIONAL INTERFERENCE WITH PERFORMANCE OF A CONTRACT

■ We will now consider whether Count III of Appellant's second amended complaint alleges facts sufficient to support her claim for intentional interference with performance of a contract. There are four elements to this cause of action:

(1) the existence of a contractual relationship;

(2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship;

(3) the absence of a privilege or justification for such interference; and

(4) damages resulting from the defendant's conduct.

*Triffin v. Janssen,* 426 Pa.Super. 57, 626 A.2d 571, 574 (1993). The problem for Appellant is that, absent a contract, employees in Pennsylvania are considered to be at-will. Therefore, they can be terminated at any time, for any reason. *Stumpp v. Stroudsburg Mun. Auth.,* 540 Pa. 391, 396, 658 A.2d 333, 335 (1995).

In her second amended complaint, Appellant does not allege that she was a contractual employee. Instead, she attempts to bring herself within the ambit of *Yaindl v. Ingersoll–Rand Co.,* 281 Pa.Super. 560, 422 A.2d 611 (1980). In *Yaindl,* a panel of this Court held that a cause of action exists where a person intentionally and improperly interferes with "another's *prospective* contractual relation." *Id.,* 422 A.2d at 624 (emphasis added). Moreover, that interference must induce or cause a third person not to enter into the prospective relationship. *Id.*

Appellant recognizes that Albert did not interfere with any *prospective* contractual relationship between Santiago and herself. Instead, she relies upon language found in footnote six of *Yaindl:* "Of course, an action for intentional interference with the performance of a contract lies even though the contract interfered with is terminable at the will of the parties." *Id.* 422 A.2d at 618. Thus, she asserts, an action for intentional interference with the performance of a contract by a third person exists even when the relationship is at-will employment.

■ We cannot accept Appellant's argument for a number of reasons. First, the language from the footnote quoted above is dicta because it was not essential to the holding of the panel. Second, Appellant brings no cases to our attention where this doctrine has been extended to the ambit of at-will employment. Thus, we are con-

strained to hold that an action for intentional interference with performance of a contract in the employment context applies only to interference with a prospective employment relationship whether at-will or not, not a presently existing at-will employment relationship. Therefore, we affirm the trial court's decision to grant Albert's preliminary objection as to Count III of the Appellant's second amended complaint.

Order affirmed as to Counts I and III of Appellant's second amended complaint. Order reversed as to Count II of Appellant's second amended complaint. Case remanded to the Court of Common Pleas of Mercer County for proceedings consistent with this Opinion. Jurisdiction is relinquished.