[J-4-2023] [MO: Brobson, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| CARA SALSBERG, | : | No. 7 EAP 2022 |
| | : | |
| Appellant | : | Appeal from the Judgment of |
| | : | Superior Court entered on |
| | : | September 15, 2021 at No. 623 EDA |
| v. | : | 2019 affirming the Order entered on |
| | : | January 17, 2019 in the Court of |
| | : | Common Pleas, Philadelphia |
| DONNA MANN AND DREXEL | : | County, Civil Division at No. |
| UNIVERSITY, | : | 170603584. |
| | : | |
| Appellees | : | ARGUED:  March 7, 2023 |

## CONCURRING OPINION

**JUSTICE WECHT**                                    **DECIDED: February 21, 2024**

I join the Majority Opinion in full.  The tort of intentional interference with contractual relations can apply to a third party's interference with an employee's at-will employment relationship with his or her employer.  I write separately to elaborate upon how this Court's recognition of this tort fits into the dynamics of at-will employment.

In declining to recognize the viability of this tort in the context of at-will employment, the Superior Court's *en banc* majority relied upon *Hennessy v. Santiago*.[1]  In that decision a quarter century ago, a panel of the Superior Court had declared without elaboration that "an action for intentional interference with performance of a contract in the employment context applies only to interference with a prospective employment relationship *whether at-will or not*, not a presently existing at-will employment relationship."[2]

---

[1]     708 A.2d 1269 (Pa. Super. 1998).

[2]     *Id.* at 1279 (emphasis added).

The Superior Court's allegiance to its *Hennessy* holding is perplexing. In its decision in this case, the Superior Court acknowledged that there was (unspecified) "tension in *Hennessy*'s explicit reasoning," and that *Hennessy* provided little explanation of why, in terms of an employee's expectation of continued employment, there was a "critical" difference between prospective at-will employment and current at-will employment.[3] Yet, rather than confront this tension, the Superior Court embraced it.[4] Pennsylvania tort law, the Superior Court explained, provides a remedy for interference with a prospective contractual relationship because in that scenario the relationship "is something less than a contractual right, something more than a mere hope."[5] By contrast, the Superior Court opined, there was "nothing prospective" about Cara Salsberg's relationship with Drexel University, because "any expectation of continued at-will employment is nothing more than a mere hope."[6]

This makes little sense. If a current at-will employee's expectation of employment is a "mere hope," why would a *prospective* at-will employee have "more than a mere hope" about a "mere hope"? An employer may rescind an offer of at-will employment before the employment commences or may fire the at-will employee on day one of his employment or on any day thereafter.[7] That no one holds entitlement to a particular duration of

---

[3]     *Salsberg v. Mann*, 262 A.3d 1267, 1271-72 (Pa. Super. 2021) (*en banc*).

[4]     *See id.* at 1272.

[5]     *Id.* at 1271 (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979)).

[6]     *Id.*

[7]     The law does recognize that certain employees may have a reasonable expectation of employment after accepting an employer's offer. But that is only the case when the employment arrangement was not, in fact, at-will. *See Cashdollar v. Mercy Hosp. of Pittsburgh*, 595 A.2d 70, 73-74 (Pa. Super. 1991) (holding that employment was not at-will and employer could not discharge employee without just cause for a reasonable (continued…)

employment—not the employer, not a current employee, and not a prospective employee—is inherent in the very nature of at-will employment. With few exceptions, the employer is free to terminate the employee's employment, just as the employee is free to quit.[8]

What Salsberg had a right to expect, however, was that Drexel would pay her compensation in exchange for her labor, and that the arrangement would continue under the agreed-upon terms until *one of the parties* changed or ended the arrangement. That Drexel could terminate Salsberg's employment for any reason not prohibited by law does not give a third party license to interfere with Drexel and Salsberg's employment relationship.

Properly understood and applied, this tort does not create a new avenue for pursuit of a wrongful discharge claim. Nor does it enmesh courts in personnel disputes or otherwise interfere with the fundamental principles of at-will employment. In most cases, if the alleged tortfeasor is the plaintiff's co-worker, that person is not a third party in relation to the plaintiff and the employer as a matter of law.[9] So long as the co-worker acts within the scope of her employment, that co-worker acts as the employer's agent, not as a third party.[10]

---

time because employee provided additional consideration by incurring hardship beyond what any salaried professional would incur).

[8] *See Geary v. U.S. Steel Corp.*, 319 A.2d 174, 176 (Pa. 1974) ("Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason.").

[9] *See* Maj. Op. at 25-26 (noting that, because a corporation is a legal entity, it acts only through its officers, agents, and employees and cannot interfere with a contract with itself); *see also Nix v. Temple Univ. of Com. Sys. of Higher Educ.*, 596 A.2d 1132, 1137 (Pa. Super. 1991) (same).

[10] *See* Maj. Op. at 27 (holding that a plaintiff has no cause of action against a co-worker for the intentional interference with contractual relations between the plaintiff and (continued…)

On the other side of the same coin we find the closely related tort element that the third party's actions must be improper.[11] The Majority stops short of applying this element in light of its holding.[12] It bears repeating, however, that this common law principle acts as a further restraint in cases like this one, where the alleged third party is the plaintiff's former supervisor and the alleged interference involves the supervisor's actions in connection with managing or terminating the plaintiff's at-will employment.[13] A supervisor, on behalf of the employer, often has the authority and privilege to discipline or end the employment of the plaintiff for *any* lawful reason. Even in situations where the employer did not provide the supervisor with the direct authority to terminate the plaintiff's employment, the supervisor, as the employer's agent charged with managing the

---

her employer "unless the alleged misconduct of the co-worker falls outside the scope of the co-worker's employment or authority").

[11] *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 475 (Pa. 2011) ("Ours is a free society where citizens may freely interact and exchange information. Tortious interference, as a basis for civil liability, does not operate to burden such interactions, but rather, to attach a reasonable consequence when the defendant's intentional interference was 'improper.'").

[12] *See* Maj. Op. at 26-27 n.16 ("Given . . . our ultimate conclusion . . . that Salsberg's claim fails for lack of a third party, we need not proceed to address the nature of the third party's conduct as 'privileged,' 'justified,' or otherwise 'improper.'"); *see also Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 393 A.2d 1175, 1184 n.17 (Pa. 1978) (explaining that, instead of the Restatement of Torts (First)'s approach of deciding whether the third party had the "privilege" to act, the Restatement of Torts (Second) examines more broadly whether the interference was "improper or not under the circumstances").

[13] *Accord Menefee v. Columbia Broad. Sys., Inc.*, 329 A.2d 216 (Pa. 1974). Menefee, a radio talk show host, was a party to an employment contract with CBS, Inc. and a radio station wholly owned by CBS. The station's general manager and a vice president of CBS exercised the contractual right of the corporate entities to end Menefee's employment upon thirteen weeks' notice. Menefee sued the general manager and the vice president for intentional inference with contractual relations. This Court held that because the general manager and vice president had the "privilege to advise the station on handling its employees" as part of their employment, they also possessed the privilege to "cause the station to terminate the contract." *Id.* at 221.

plaintiff's job performance, has the authority and privilege to share with other agents of the employer his or her perception of the plaintiff's performance.

As the Majority ably recounts, even viewing the evidence in the light most favorable to Salsberg, Salsberg did not prove that her former supervisor, Donna Mann, acted outside the scope of Mann's employment, and accordingly did not prove that Mann acted as a third party.[14] Salsberg alleged that Mann's criticisms of Salsberg's performance were unwarranted and unfair, and that Mann's characterization of Salsberg's performance was motivated by reasons personal to Mann, such as Mann's dislike of, or jealousy of, Salsberg. But Mann, Drexel's agent in a supervisory role, was authorized to assess Salsberg's performance.

When an alleged tortfeasor supervises the plaintiff's employment, and the plaintiff's allegations pertain to such supervision, the plaintiff rarely will be able to prove that the supervisor acted improperly, without privilege, and outside the scope of employment as a third party. The law does not prohibit unfair treatment of an employee, except where the treatment offends certain limited public policy exceptions,[15] violates the terms of a collective bargaining agreement or employment contract, or runs afoul of anti-discrimination or other employment statutes.[16] In an at-will system, the only recourse for an employee whose employer is treating her unfairly, but lawfully, is to quit. Whether one

---

[14] *See* Maj. Op. at 31-39.

[15] *See Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989) ("[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship," except "in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.").

[16] *See Renna v. PPL Elec. Utils., Inc.*, 207 A.3d 355, 369 (Pa. Super. 2019) ("Anti-discrimination statutes do not prohibit all verbal or physical harassment in the workplace, only harassment that constitutes discrimination *because of* specified protected classifications.").

agrees or disagrees with this system, one cannot deny that it is premised upon each party's general freedom to end the relationship without allowing legal recourse to the other for prospective unearned salary, and notwithstanding the possibility of disruption to the employer's business due to the loss of the employee's labor.[17]

The bottom line is that interpersonal relations, warts and all, are part of any job.[18] Mann's dislike of Salsberg may not make business sense for Drexel if Salsberg truly was a valuable productive employee. But Mann's assessment of Salsberg's job performance, even if inaccurate or distorted, is still within the scope of Mann's duties on behalf of Drexel, and her actions were therefore permissible and insufficient to support a claim for intentional interference with contractual relations. Mann may well be an ineffective and poor supervisor. But she is not a third-party tortfeasor.

Justice Donohue joins this concurring opinion.

---

[17] *See Geary v. U.S. Steel Corp.*, 319 A.2d 174, 177 n.8 (noting that some degree of harm to the other is a foreseeable and societally tolerated consequence of giving each party the freedom to end the relationship).

[18] *Id.* at 179 ("[E]ven an unusually gifted person may be of no use to his employer if he cannot work effectively with fellow employees.").