

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-10-2003

# Fraser v. Nationwide Mutl Ins

Precedential or Non-Precedential: Precedential

Docket No. 01-2921

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Fraser v. Nationwide Mutl Ins" (2003). *2003 Decisions.* Paper 14.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/14

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 10, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2921

RICHARD FRASER
a/b/a
R.A. FRASER AGENCY;
DEBORAH FRASER,

Appellants

v.

NATIONWIDE MUTUAL INSURANCE CO.;
NATIONWIDE MUTUAL FIRE INSURANCE CO.;
NATIONWIDE LIFE INSURANCE CO.;
NATIONWIDE GENERAL INSURANCE CO.;
NATIONWIDE PROPERTY & CASUALTY
INSURANCE CO.; NATIONWIDE VARIABLE LIFE
INSURANCE CO.; COLONIAL INSURANCE CO. OF
WISCONSIN

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 98-cv-06726)
District Judge: Honorable Anita B. Brody

Argued June 23, 2003

Before: SLOVITER, AMBRO and BECKER, *Circuit Judges*

(Opinion filed December 10, 2003)

James G. Wiles, Esquire (Argued)
P.O. Box 442
Yardley, PA 19067

Attorney for Appellants

Frederick C. Fletcher, II, Esquire
Curtis P. Cheyney, III. Esquire
 (Argued)
Swartz, Campbell & Detweiler
1601 Market Street, 34th Floor
Philadelphia, PA 19103

Attorneys for Appellees

## OPINION OF THE COURT

AMBRO, *Circuit Judge*:

Richard Fraser, an independent insurance agent for Nationwide Mutual Insurance Company, was terminated by Nationwide as an agent. We decide whether: he has stated a viable claim for wrongful termination under Pennsylvania law; he is entitled to damages under the Electronic Communications Privacy Act and parallel Pennsylvania law for Nationwide's alleged unauthorized access to his e-mail account; an Agents' Review Board process reviewing his termination was properly conducted; a forfeiture-for-competition provision in his agency agreement is enforceable; and the District Court abused its discretion in refusing to allow Fraser to amend his complaint and in not sanctioning Nationwide for alleged discovery violations. We affirm the District Court on all but the forfeiture-for-competition and discovery violations issues. As to the former, we remand to the District Court for reconsideration in light of new caselaw from the Pennsylvania Supreme Court. We also remand Fraser's discovery sanctions claim, which the District Court did not address.

## I.  Background

This dispute stems from Nationwide's September 2, 1998 termination of Fraser's Agent's Agreement (the

"Agreement"). It provided that Fraser sell insurance policies as an independent contractor for Nationwide on an exclusive basis. The relationship was terminable at will by either party.

The parties disagree on the reason for Fraser's termination. Fraser argues Nationwide terminated him because he filed complaints with the Pennsylvania Attorney General's office regarding Nationwide's allegedly illegal conduct, including its discriminatory refusal to write car insurance for unmarried and new drivers.[1] Fraser also contends that he was terminated for criticizing Nationwide while acting as an officer of the Nationwide Insurance Independent Contractors Association (the "Contractors Association") and for attempting to obtain the passage of legislation in Pennsylvania to ensure that independent insurance agents could be terminated only for "just cause."

Nationwide argues, however, that it terminated Fraser because he was disloyal. It points out that Fraser drafted a letter to two competitors — Erie Insurance Company ("Erie") and Zurich American Insurance ("Zurich") — expressing Contractors Association members' dissatisfaction with Nationwide and seeking to determine whether Erie and Zurich would be interested in acquiring the policyholders of the agents in the Contractors Association. Fraser claims that the letters only were drafted to get Nationwide's attention and were not sent. (Were the letters sent, however, they would constitute a violation of the "exclusive representation" provision of Fraser's Agreement with Nationwide.)

When Nationwide learned about these letters, it claims that it became concerned that Fraser might also be revealing company secrets to its competitors. It therefore searched its main file server — on which all of Fraser's e-mail was lodged — for any e-mail to or from Fraser that showed similar improper behavior.[2] Nationwide's general

---

1. As a result of Fraser's efforts, Nationwide was required to pay fines, entered into a consent order, and the Pennsylvania Attorney General's Office wrote Fraser a "thank you" letter.

2. Nationwide's associate general counsel (Randall Orr) testified that he directed a systems expert to perform the search in his (Randall Orr's) presence. The systems expert opened e-mail written to or by Fraser if the e-mail headers (*i.e.*, the to, from, and re: lines) contained relevant information.

counsel testified that the e-mail search confirmed Fraser's disloyalty. Therefore, on the basis of the two letters and the e-mail search, Nationwide terminated Fraser's Agreement. It is this search of his e-mail that gives rise to Fraser's claim for damages under the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. § 2510, *et seq.*, and a parallel Pennsylvania statute, 18 Pa. Cons. Stat. § 5702, *et seq.*

After Nationwide terminated Fraser in September 1998, he filed an appeal with the Agents' Administrative Review Board (the "Board"). Fraser's Agreement with Nationwide provides that "the Agent shall have access to the Agents' Administrative Review Board, and its procedures, as it may exist from time to time." The Agreement did not, however, specify any particular procedures that the Board would follow, nor did it guarantee the availability of Board review. Board procedures were laid out in the agents' Compensation and Security Handbook (the "Handbook"), which stated explicitly that the procedures were not part of the Agreement between an agent and Nationwide. In considering Fraser's case, the Board split 2-2, and Nationwide's employee, acting as the tiebreaker, affirmed Fraser's termination. Fraser argues that the review process was a "sham" and contends that Nationwide conducted the review process in bad faith.

Within a year of his termination, Fraser went to work for a competitor of Nationwide, thereby triggering a "forfeiture-for-competition" provision in his Agreement. That provision specifies that an agent will forfeit deferred compensation by becoming employed by another insurance business within a twenty-five mile radius within one year of cancellation of the agent's Agreement. Fraser contends that, because of the provision, he forfeited several hundred thousand dollars of deferred compensation.[3] He argues that the provision is invalid under Pennsylvania law because it is unduly restrictive.

---

3. We note, however, that there is no record evidence concerning the amount of deferred compensation Fraser forfeited and the District Court made no findings of fact on this issue.

As a result of these events, Fraser filed suit in the United States District Court for the Eastern District of Pennsylvania to contest: (1) his termination; (2) the alleged violation of his privacy rights under the ECPA and parallel Pennsylvania statute; (3) the Board's review procedure; and (4) the forfeiture-for-competition provision in his Agreement. Events during litigation in the District Court also have spawned issues on appeal. First, Fraser alleges that Nationwide committed numerous discovery violations. He claims that "[i]t is no hyperbole to state that in this case, no discovery was received from Nationwide without a court order compelling discovery, no court order compelling discovery from Nationwide went unviolated and more than one Nationwide witness was less than candid." On this basis, Fraser seeks discovery sanctions against Nationwide. Second, the District Court denied Fraser leave to amend his complaint a third time to add two more state-law causes of action: conversion and invasion of privacy. The Court believed that Fraser's third amendment was merely a dilatory tactic because he sought leave to amend the day before Fraser's response to Nationwide's motion for summary judgment was due. The Court granted summary judgment for Nationwide on all counts. Fraser appeals.[4]

## II.  Discussion

### A.  Wrongful Termination Claim

Whether Pennsylvania grants a cause of action for wrongful termination in this context is a question of law, over which we exercise plenary review. *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 613 (3d Cir. 1992). Fraser argues that, notwithstanding that his agency relationship with Reliance was "at-will," his termination was wrongful (and actionable) because it was motivated by his agitations for just-cause legislation — which Nationwide found undesirable, his reporting of Nationwide's allegedly illegal

---

4. The District Court had jurisdiction under 28 U.S.C. § 1331 and 1332. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. Nationwide asserts that we lack appellate jurisdiction because Fraser's appeal was untimely. A motions panel of this Court has, however, concluded otherwise, and we agree.

activities, and his leadership position in the Contractors Association. He notes that, while the general rule is that at-will employees may be terminated for any or no reason, courts have forbidden the firing of at-will employees when doing so would offend Pennsylvania's public policy. *See Geary v. U.S. Steel*, 319 A.2d 174, 185 (Pa. 1974). He asserts that his termination fits this exception. Nationwide responds that Fraser was not an employee but rather an independent contractor, and thus the cases prescribing this public policy exception do not apply here.

Because no Pennsylvania case addresses whether there are limitations on a company's ability to terminate an independent contractor (as opposed to an employee), the District Court assumed *arguendo* that the public policy cases apply equally to independent contractors. We too proceed by so assuming without deciding the question.

We begin by noting that Pennsylvania courts have construed the public policy exception to at-will employment narrowly, lest the exception swallow the general rule. *See Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989) ("Exceptions to [the rule that terminations from at-will positions may not be challenged] have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy."). In *Hennessy v. Santiago*, 708 A.2d 1269 (Pa. Super. Ct. 1998), a Pennsylvania court recognized three limited circumstances in which public policy will trump employment at-will. "[A]n employer (1) cannot require an employee to commit a crime [and fire the employee for refusing to do so], (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute." *Id.* at 1273 (internal citation omitted). The Pennsylvania Supreme Court has never formally adopted *Hennessy*'s three exceptions to the at-will employment doctrine. However, in *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998), the Supreme Court did say that "public policy" is not limited to "that which has been legislatively enacted." *Id.* at 1235. But it also went on to note that a non-legislatively expressed public policy must be extremely clear to be cognizable in

this context; indeed acceptance must be virtually universal. Quoting *Mamlin v. Genoe*, 17 A.2d 407 (Pa. 1941), it stated:

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs of and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.

*Shick*, 716 A.2d at 1235-36 (quoting *Mamlin*, 17 A.2d at 409).

Fraser argues that his case fits within *Hennessy*'s first two exceptions: Nationwide fired him for refusing to commit a crime and for his attempt to comply with a statutorily imposed duty. We find these arguments unconvincing. Even assuming that the Pennsylvania Supreme Court would also view these as exceptions to an employer's right to fire an at-will employee, Fraser has presented no evidence that Nationwide directed him to commit any crime, nor has he pointed us to any statutory duty to report Nationwide's violations of the law. *Compare Field v. Philadelphia Electric Co.*, 565 A.2d 1170 (Pa. Super. 1989) (holding termination wrongful when employee had a statutory duty to report violations), *with Hennessy v. Santiago*, 708 A.2d 1269 (Pa. Super. 1998) (rejecting the argument that a counselor could not be fired because she reported a rape of another to the district attorney because the employee had no statutory duty to report the rape).

Fraser also relies on *Shick*'s pronouncement that public policy may be broader than what is legislatively enacted. He notes that in *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir. 1983), we held that firing an employee for his refusal to participate in a political lobbying effort contravened public policy and therefore was impermissible. In light of *Novosel*, Fraser asserts we should view the First Amendment of the United States Constitution and the Pennsylvania Constitution as limitations on employers' discretion to fire at-will employees. Yet we have declined to

read *Novosel* so broadly and, indeed, have previously rejected Fraser's position. In *Borse*, we noted that "the Superior Court has refused to extend constitutional provisions designed to restrict governmental conduct in the absence of state action." *Borse*, 963 F.2d at 619 (citing *Martin v. Capital Cities Media, Inc.*, 511 A.2d 830, 844 (Pa. Super. 1986); *Cisco v. United Parcel Servs., Inc.*, 476 A.2d 1340, 1344 (Pa. Super. 1984)). We "predict[ed] that if faced with the issue, the Pennsylvania Supreme Court would not look to the First . . . Amendment[] as [a] source[] of public policy when there is no state action." *Id.* at 620. Moreover, we note that Pennsylvania courts "have repeatedly rejected claims that a private employer [as opposed to a public employer] violated public policy by firing an employee for whistleblowing, when the employee was under no legal duty to report the acts at issue." *Donahue v. Fed. Express Corp.*, 753 A.2d 238, 244 (Pa. Super. 2000).[5] As a result, we have essentially limited *Novosel* to its facts — a firing based on forced political speech.

In this context, we predict that the Pennsylvania Supreme Court would decline to find a cause of action for termination under Fraser's circumstances and hence affirm the District Court on this ground.

## B. ECPA Claims and Parallel State Law Claims

### 1. Title I

Fraser argues that, by accessing his e-mail on its central file server without his express permission, Nationwide violated Title I of the ECPA, which prohibits "intercepts" of electronic communications such as e-mail.[6] The statute defines an "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other

---

5. The Pennsylvania Whistleblower's Law, 43 Pa. Cons. Stat. § 1421, *et seq.,* does not apply to private employers.

6. As noted, Fraser also argues that Nationwide has violated the Pennsylvania counterpart to ECPA Title I, 18 Pa. Cons. Stat. § 5702, *et seq.* Because this statute is interpreted in the same way as the ECPA, the analysis and conclusions in the text apply equally to this state-law claim, which Fraser also does not analyze separately.

device." 18 U.S.C. § 2510(4). Nationwide argues that it did not "intercept" Fraser's e-mail within the meaning of Title I because an "intercept" can only occur contemporaneously with transmission and it did not access Fraser's e-mail at the initial time of transmission.

On this matter of statutory interpretation which we review *de novo, Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1063 (3d Cir. 1992), we agree with Nationwide. Every circuit court to have considered the matter has held that an "intercept" under the ECPA must occur contemporaneously with transmission. *See United States v. Steiger*, 318 F.3d 1039, 1048-49 (11th Cir. 2003); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457 (5th Cir. 1994); *see also Wesley College v. Pitts*, 974 F. Supp. 375 (D. Del. 1997), *summarily aff'd*, 172 F.3d 861 (3d Cir. 1998).

The first case to do so, *Steve Jackson Games*, noted that "intercept" was defined as contemporaneous in the context of an aural communication under the old Wiretap Act,[7] *see United States v. Turk*, 526 F.2d 654 (5th Cir. 1976), and that when Congress amended the Wiretap Act in 1986 (to create what is now known as the ECPA) to extend protection to electronic communications, it "did not intend to change the definition of 'intercept.'" *Steve Jackson Games*, 36 F.3d at 462. Moreover, the Fifth Circuit noted that the differences in definition between "wire communication" and "electronic communication" in the ECPA supported its conclusion that stored e-mail could not be intercepted within the meaning of Title I. A "wire communication" under the ECPA was (until recent amendment by the USA Patriot Act, *see* note 8) "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . *and such term includes any electronic storage of such communication.*" 18 U.S.C.

---

7. The Wiretap Act was formally known as the 1968 Omnibus Crime Control and Safe Streets Act and was also found at 18 U.S.C. § 2510, *et seq.* As noted in the text *infra*, it was superseded by the ECPA.

§ 2510(1) (emphasis added) (superseded by USA Patriot Act).[8] By contrast, an "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system . . . but does *not include . . . any wire or oral communication*." 18 U.S.C. § 2510(12) (emphasis added). Thus, the Fifth Circuit reasoned that because "wire communication" explicitly included electronic storage but "electronic communication" did not, there can be no "intercept" of an e-mail in storage, as an e-mail in storage is by definition not an "electronic communication." *Steve Jackson Games*, 36 F.3d at 461-62.

Subsequent cases, cited above, have agreed with the Fifth Circuit's result. While Congress's definition of "intercept" does not appear to fit with its intent to extend protection to electronic communications, it is for Congress to cover the bases untouched. We adopt the reasoning of our sister circuits and therefore hold that there has been no "intercept" within the meaning of Title I of ECPA.

*2. Title II*

Fraser also argues that Nationwide's search of his e-mail violated Title II of the ECPA.[9] That Title creates civil liability for one who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a). The statute defines "electronic storage" as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication

8. The USA Patriot Act § 209, Pub. L. No. 107-56, § 209(1)(A), 115 Stat. 272, 283 (2001), amended the definition of "wire communication" to eliminate electronic storage from the definition of wire communication.

9. Fraser contends as well that Nationwide has violated the Pennsylvania counterpart to ECPA Title II, 18 Pa. Cons. Stat. § 5741, *et seq.* The analysis is identical to that of ECPA Title II.

service for purposes of backup protection of such communication." *Id.* § 2510(17).

The District Court granted summary judgment in favor of Nationwide, holding that Title II does not apply to the e-mail in question because the transmissions were neither in "temporary, intermediate storage" nor in "backup" storage. Rather, according to the District Court, the e-mail was in a state it described as "post-transmission storage." We agree that Fraser's e-mail was not in temporary, intermediate storage. But to us it seems questionable that the transmissions were not in backup storage — a term that neither the statute nor the legislative history defines. Therefore, while we affirm the District Court, we do so through a different analytical path, assuming without deciding that the e-mail in question was in backup storage.

18 U.S.C. § 2701(c)(1) excepts from Title II seizures of e-mail authorized "by the person or entity providing a wire or electronic communications service." There is no circuit court case law interpreting this exception. However, in *Bohach v. City of Reno*, 932 F. Supp. 1232 (D. Nev. 1996), a district court held that the Reno police department could, without violating Title II, retrieve pager text messages stored on the police department's computer system because the department "is the provider of the 'service' " and "service providers [may] do as they wish when it comes to accessing communications in electronic storage." *Id.* at 1236. Like the court in *Bohach*, we read § 2701(c) literally to except from Title II's protection all searches by communications service providers. Thus, we hold that, because Fraser's e-mail was stored on Nationwide's system (which Nationwide administered), its search of that e-mail falls within § 2701(c)'s exception to Title II.

## C.  Bad Faith in Board Review

Fraser next argues that the Board's review of his termination was a "sham." He contends that, when the Board was split 2-2 whether to affirm his termination, Nationwide's employee did not in good faith consider his case but rather was essentially instructed by Nationwide management to affirm his dismissal. Nationwide replies that, because the Board review process was not guaranteed

in his Agreement with Nationwide, Fraser had no contractual right to Board review at all. And while it argues that the specifics of the Board review process were discussed in the Handbook, it contends that the Handbook was not incorporated into the Agreement and thus did not contractually bind Nationwide. *See Jacques v. AZKO Int'l Salt, Inc.*, 619 A.2d 748, 753 (Pa. Super. 1993) ("An employee handbook only forms the basis of an implied contract if the employee shows that the employer affirmatively intended that it do so."). According to Nationwide, because it did not intend the Handbook to be a contractual right, there can be no breach of any implied covenant of good faith and fair dealing with respect to Board review.

Even assuming that his Agreement with Nationwide entitles Fraser to a review because a Board review procedure currently exists in the Handbook, Fraser has not made the case that Nationwide acted in bad faith. There is no record evidence to suggest that it was inappropriate (albeit counterintuitive) for a Nationwide employee to act as a tiebreaker if the Board was divided. More to the core, there is no evidence that the Board's decision would even be binding — as opposed to merely advisory — on Nationwide. Fraser has failed to meet his burden of proof on this issue and thus the District Court correctly granted summary judgment in favor of Nationwide.

## D. Forfeiture-for-Competition Provision

Section 11(f) of the Agent's Agreement contains a forfeiture-for-competition provision, whereby an agent will forfeit deferred compensation by becoming associated with another insurance business in a twenty-five mile radius within one year of cancellation of the Agent's Agreement. Fraser alleges that, because of financial hardship, he was forced to seek work with another insurance company and, as a result, forfeited several hundred thousand dollars of deferred compensation. The District Court held the provision enforceable under the three-part test set out in *Bilec v. Auburn & Associates, Inc. Pension Trust*, 588 A.2d 538 (Pa. Super. 1991). Under that test, a Pennsylvania court will uphold a forfeiture-for-competition provision if: (1) it "relate[s] to a contract for employment; (2) [it is]

supported by adequate consideration; [and] (3) [its application is] reasonably limited in both time and territory." *Id.* at 541 (citing *Piercing Pagoda, Inc. v. Hoffner*, 351 A.2d 207, 210 (Pa. 1976)). Fraser argues that the provision is void because his termination was involuntary and inequitable and because forfeiture is disfavored in Pennsylvania.

When the District Court issued its opinion, it did not have the benefit of the Pennsylvania Supreme Court's opinion in *Hess v. Gebhard & Co., Inc.*, 808 A.2d 912 (Pa. 2002), in which the Supreme Court held a forfeiture-for-competition provision invalid as applied. While *Hess* involved a quite different situation — an insurance company that had sold its business was attempting to enforce a restrictive covenant not to compete even though it had no ongoing operating interest in the insurance business — the decision was written in broad terms and thus guides our analysis. The Court noted that we must "balance the employer's protectible business interest against the oppressive effect on the employee's ability to earn a living in his or her chosen profession, trade, or occupation." *Id.* at 923. It went on to say that "pure financial gain at the expense of restricted competition is insufficient to constitute a protectible business interest." *Id.* While the Court recognized that goodwill and trade secrets might in some cases justify restrictive covenants, it concluded that, on the facts before it, the selling company "ha[d] not demonstrated that the information it seeks to protect, mainly its prices and customer lists, is particular or unique to its business and deserves protection as a trade secret or confidential information." *Id.* at 923-24. For example, lists of potential customers for an insurance business were available merely by looking in telephone directories. This context therefore could not justify a restrictive covenant. *Id.* at 924.

Because the District Court did not have the benefit of *Hess*, we remand Fraser's forfeiture-for-competition claim to it to apply the *Hess* analysis. On remand, the Court will need to balance the interests Nationwide seeks to protect (if any) against the harm to Fraser. In so doing, because the record is silent as to the precise amount of deferred

compensation that the clause would require Fraser to forfeit as well as the nature of Nationwide's protectible business interests, the Court will need to make additional factual findings.

### E. Claims for Invasion of Privacy and Conversion

Fraser sought to amend his complaint a third time to assert common law claims for invasion of privacy and conversion. The District Court, however, first granted Nationwide's motion for summary judgment on all of Fraser's other claims, then denied leave to amend. We review the District Court's denial of leave to amend for abuse of discretion. *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

Under the Federal Rules of Civil Procedure, a plaintiff is entitled to amend his complaint once; courts may grant subsequent amendments "when justice so requires." Fed. R. Civ. P. 15(a). While this Rule also states that leave to amend should be "freely given," a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party. *See, e.g., Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Nationwide contends that Fraser presented no support for its argument that the Court abused its discretion. Moreover, Fraser sought leave to file a third amended complaint to state these two additional causes of action at the eleventh hour — the day before his opposition to Nationwide's summary judgment motion was due.

In this context, we do not believe the District Court abused its discretion. As noted, the Court allowed Nationwide to amend its complaint two times previously. This third — and untimely — effort to amend appears dilatory. While Fraser argues that Nationwide committed discovery violations, mentioned below, it is unclear how these alleged violations adversely affected Fraser's ability to assert his conversion and invasion of privacy claims in an earlier amendment — as all the claims are based on the

same facts and events as the federal ECPA claims and parallel state claims he asserted at the outset.

## F. Discovery Violations

Finally, Fraser argues that the District Court erred in not adjudicating his motion for discovery sanctions under Fed. R. Civ. P. 37, which has been pending since December 2000. The record reveals that Fraser has submitted a memorandum of law detailing the costs he incurred as a result of Nationwide's alleged discovery violations, which the District Court never addressed. Nationwide submitted a memorandum in opposition. Because we remand for other reasons, and the District Court is more familiar with how the discovery process unfolded in this case than are we, we leave it to the District Court to address the motion for sanctions in the first instance.[10]

## III. Conclusion

We affirm the District Court's grant of summary judgment in favor of Nationwide on Fraser's wrongful termination claim, his ECPA and parallel state claims, and his bad-faith claim. We vacate and remand the forfeiture-for-competition claim for consideration in light of the Pennsylvania Supreme Court's recent decision in *Hess.* Moreover, on remand, the Court should address Fraser's motion for discovery sanctions.

A True Copy:
    Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

10. In so doing, we take no position on the merits of Fraser's claim for sanctions.