**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4143
_____

THORNTON CARROLL,

                                        Appellant

v.

ABM JANITORIAL SERVICES-MID ATLANTIC INC.
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-11-cv-01041)
District Judge:  Honorable Leonard P. Stark
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 16, 2014
Before:  JORDAN, COWEN and BARRY, Circuit Judges

(Opinion filed: June 17, 2014)
_____

OPINION
_____

PER CURIAM

        Thornton Carroll, proceeding pro se, appeals from the District Court's September

18, 2013, order entering summary judgment in favor of ABM Janitorial Services-Mid

Atlantic Inc. ("ABM").  We will affirm.

I.

The facts being well-known to the parties, we set forth only those most pertinent to this appeal. Carroll, a cleaner, worked for Brandywine Building Services, Inc., and continued in that capacity after the company was acquired by ABM Janitorial Services-Mid Atlantic, Inc. ("ABM") on January 1, 2006. He received ABM's "Information for Employees" and signed a Statement of Acknowledgement. Among other things, the document stated that employees were not permitted to punch another's time card and that doing so would result in immediate termination with cause. He also received and signed ABM's "Work Rules," which stated that tampering with attendance records was cause for termination.

Carroll was assigned to the Bank of America ("BOA") site as a supervisor, along with another ABM employee, Gary Cooper, who was a shift manager. They worked the evening shift, Monday through Friday, from 5:00 p.m. to 1:00 a.m., as lateral supervisors. Their direct supervisors were two project managers, who in turn reported to a district manager. Carroll's duties included supervising a staff of cleaners at several BOA buildings. He was responsible for overseeing the performance, attendance, and punctuality of staff, and for hiring and firing employees, subject to approval from one of the project managers. Carroll could also call a project manager if a problem occurred during his shift.

2

On the evening of July 3, 2009, Carroll and Cooper were on duty. Around 9:30 p.m., Carroll observed employees leaving early. They were not clocking out, and he did not try to stop them. Instead, he went to other buildings under his supervision to determine why they were leaving early. At some point, he called Cooper, who told him that "it was common practice to allow employees to leave early on the evening before a holiday and to clock out the entire staff at the shift end." Carroll v. ABM Janitorial Servs.-MID Atl., Inc., 970 F. Supp. 2d 292, 296 (D. Del. 2013). Carroll did not notify the project managers or the district manager about the early departures. He left early, at 10:30 p.m., and Cooper signed off on the time sheets that reflected that the employees had worked a full shift.

ABM's project managers learned about the early departures in August 2009. Carroll and Cooper then met with a project manager and the district manager. They explained that they made the decision to dismiss the employees at 10:30 p.m. instead of midnight, the usual shift ending time, because the building was fairly empty that day and it was a holiday weekend. They also admitted "their responsibility for the decision to allow the early shift end." Id. at 297. A report prepared after the meeting recommended suspensions for Cooper and Carroll and warned them that another violation would result in immediate termination. Carroll then requested a second, and private, meeting with the district manager. He told them that the employees actually left at 9:30 p.m., not 10:30

3

p.m., and that he didn't report the early departures because he didn't want to have a conflict with Cooper.

According to a subsequent series of internal ABM emails, the district manager was authorized to terminate Cooper and Carroll on August 6, 2009. Carroll was then advised that his employment was terminated effective August 10, 2009, for violation of company policies and procedures, due to his actions on July 3, 2009. Specifically, he was told that he was terminated for allowing employees to leave two hours early with pay. Cooper was also terminated.

Carroll filed a complaint against ABM alleging employment discrimination, violations of his civil rights, defamation, race discrimination, and retaliation. Following discovery, the parties cross-moved for summary judgment. Carroll moved for summary judgment on all of his claims and argued that he was not terminated for just cause. ABM moved for summary judgment on the grounds that Carroll's claims failed as a matter of law, and that he was an at-will employee who could not maintain a claim for wrongful termination. The District Court granted ABM's motion and denied Carroll's. He timely appealed.

II.

We have jurisdiction pursuant to 28 U.S.C. §1291.[1] We exercise plenary review over a district court's grant of summary judgment. Fraser v. Nationwide Mut. Ins. Co.,

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a).

4

352 F.3d 107, 111 (3d Cir. 2003). Summary judgment is appropriate if, viewing the record in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The only issue Carroll raises on appeal is that the District Court improperly granted summary judgment in ABM's favor on his wrongful termination claim. He concedes that he was an at-will employee, and argues that "ABM's decision to terminate its at-will employee should have been made in good faith, but was not," in violation of Delaware's implied covenant of good faith and fair dealing. (Appellant's Br. pp. 7, 9.) He claims that ABM fabricated the charges against him. Specifically, he asserts that the project managers "manufactured false allegations to support their grounds to terminate [him] on August 10, 2009." (Id. p. 10.) In response, ABM argues that Carroll was an at-will employee who could be terminated at any time, with or without cause, and that it did not manufacture false grounds for his termination. (Appellee's Br. pp. 22-24.)

In Delaware, an implied covenant of good fair and fair dealing is read into every employment contract. See Freebery v. Coons, 589 F. Supp. 2d 409, 423 (D. Del. 2008). The employment-at-will doctrine "generally permits the dismissal of employees without cause and regardless of motive." E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d 436, 437 (Del. 1996). Yet the covenant of good faith and fair dealing "permits a cause of action against an employer for the deceitful acts of its agent in manufacturing materially

5

false grounds to cause an employee's dismissal." Id. The Delaware Supreme Court has cautioned, however, that where the employment at-will doctrine is broad, the covenant of good faith and fair dealing is "narrow and carefully crafted," and Delaware courts have found it breached in extremely limited circumstances. See id. at 438, 443-44; see also Freebery, 589 F. Supp. 2d at 423-24 (D. Del. 2008).

The District Court determined that Carroll was terminated "for violation of timekeeping procedures." Carroll, 970 F. Supp. 2d at 301. It also concluded that the "record does not reflect that any employee manufactured false allegations" against him.[2] Id. The issue before us, then, is whether Carroll provided enough evidence to create a genuine issue of material fact as to whether ABM falsely accused him of the timekeeping violations that occurred on July 3, 2009.

Carroll testified that he knew employees left early on July 3, 2009. (Appellee's App. p. 46.) He also testified that the employees failed to punch out and that he failed to secure approval for their unauthorized early departures. (Id. pp. 36-38, 41.) He also admitted that he left early. (Id. p. 39.) Finally, he testified that he did not report the early departures to the project managers, as required, and failed to ensure that the early departing employees punched out to prevent them from being paid for hours not worked. (Id. pp. 40-41.)

---

[2] The District Court also determined that "the other exceptions to the at-will employment doctrine are inapplicable." Carroll, 970 F. Supp. 2d at 302. Carroll does not dispute that conclusion.

6

The record supports the District Court's conclusion that Carroll was terminated for violating ABM's timekeeping procedures. We understand that Carroll disputes some of the events that occurred on July 3, 2009, and in the time leading up to his termination. (Appellant's Br. pp. 15-17.) That alone is not enough to overcome the District Court's conclusion that ABM did not manufacture false allegations against him. Carroll offers no evidence that would create a genuine issue of material fact on that key issue. Carroll was an at-will employee, and, absent any evidence of false allegations, ABM was legally permitted to terminate him with or without cause. We perceive no error in the District Court's conclusion that Carroll's wrongful termination claim failed as a matter of law.[3] We will, therefore, affirm its September 17, 2013, order entering summary judgment in ABM's favor.

---

[3] The District Court also granted summary judgment to ABM on Carroll's defamation, civil rights, and race discrimination claims. Carroll has not raised those issues on appeal. Therefore, we consider them waived. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005).